IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

PAUL C.,[1]                                          Case No. 6:18-cv-00639-AA
                                                     **OPINION AND ORDER**
                  Plaintiff,
        vs.

ANDREW SAUL,
Commissioner of Social Security

                  Defendant.
_____

AIKEN, District Judge:

      Plaintiff Paul C. seeks judicial review of the final decision of the Commissioner

of Social Security ("Commissioner") denying his claim for Disability Insurance

Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has

jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons below, the

Commissioner's decision is REVERSED and REMANDED for further proceedings.

/ / /

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name
of the non-governmental party or parties in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

## BACKGROUND

On November 26, 2013, plaintiff applied for DIB and SSI Under Titles II and XVI of the Social Security Act ("Act") respectively. Tr. 18. Plaintiff alleged disability beginning January 1, 2003, due to a broken collar bone; damaged tendons in both hands; numbness and sensitivity in the feet and legs; hip misalignment; exhaustion; significant weight loss; and depression. Tr. 72. Plaintiff's DIB and SSI were denied initially and upon reconsideration. On September 2, 2016, plaintiff appeared at a hearing in front of an administrative law judge ("ALJ"). During this hearing, plaintiff was represented by counsel, and a vocational expert testified. On November 21, 2016, the ALJ performed a sequential analysis and determined that plaintiff was not disabled under the Act. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Subsequently, plaintiff filed the present complaint before this Court.

## STANDARD OF REVIEW

A reviewing court shall affirm the decision of the Commissioner if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the district court must "review the

administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion." *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, No. 99-35555, 2001 U.S. App. LEXIS 17960, at *12 1156 (9th Cir. Aug. 9, 2001).

## COMMISSIONER'S DECISION

The plaintiff bears the initial burden of proof to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiffs must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof falls to the claimant at steps one through four and with the Commissioner at step five. *Id.*; *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner must show that the claimant can adjust to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.* If,

however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante*, 262 F.3d at 953–54.

Here the ALJ found that plaintiff was not disabled. At step one, the ALJ found that plaintiff had performed substantial gainful activity since January 1, 2003, his alleged onset date. Tr. 20. From July 2004 to September 2004, plaintiff worked as a fundraiser for MAS Enterprises. Tr. 20. During this time, plaintiff made phone calls soliciting charitable donations "for about a month, possibly longer, [and worked] approximately twenty hours per week earning approximately minimum wage." Tr. 20. Earnings records showed the claimant earned $4,098.25. *Id.* The ALJ stated that there were "no allegations of poor performance at the job or special work conditions." *Id.* However, the ALJ also found that there had been continuous twelve-month periods during which plaintiff did not engage in substantial gainful activity. Tr. 21. During the period from plaintiff's alleged disability onset date, January 1, 2003, to the date of last insured, September 30, 2009, in addition to plaintiff's job as a fundraiser in 2004, plaintiff also worked in 2005, 2008, and 2009. *Id.* The ALJ found that the earnings from these other jobs did "not rise to the level necessary to find that [plaintiff] engaged in substantial gainful activity." *Id.* Plaintiff also worked after the application date, November 26, 2013. *Id.* The ALJ also found that the earnings from that job did not rise to the level necessary to find that plaintiff engaged in substantial gainful activity. *Id.*

At step two, the ALJ found that plaintiff had the following severe impairments: left shoulder strain; lumbar spine degenerative disc disease and thoracic lumbosacral radiculitis status post laminectomy; and major depressive disorder. *Id.* At step three, the ALJ found that plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 24–25.

Before proceeding the step four, the ALJ determined that plaintiff's RFC allowed him to perform light work with these limitations:

> The claimant is limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, sitting standing, and/or walking six hours each in an eight hour day, with normal breaks. The claimant is limited to no more than occasional bilateral push and/or pull with the lower extremities. He is limited to no more than occasional climbing of ramps or stairs and no climbing of ladders, ropes, or scaffolds. The claimant is limited to no more than frequent balancing. He is limited to no more than occasional stooping, kneeling, crouching, and crawling. He is limited to no more than frequent overhead reaching with the left. He is limited to understanding and carrying out simple instructions in a work environment with few workplace changes.

Tr. 24. At step four, the ALJ found that plaintiff could perform his past relevant work as fundraiser II (DOT Code 293.357-014). Tr. 30. This finding was based on both a review of plaintiff's records and the testimony of a vocational expert. Tr. 31. The vocational expert stated that the job of fundraiser II is

> a light, unskilled job with a specific vocational profile (SVP) of two, . . . . that the claimant performed the job at the sedentary exertional level[,] . . . . [and] that if the claimant performed the job for about a month, twenty hours per week as he testified, the claimant would have met the durational requirements for past relevant work for a job with a specific vocational preparation [sic] (SVP) of two.

Tr. 31.

At step five, as an alternative to the finding at step four that plaintiff could perform past relevant work, the ALJ found that based on plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could sustain substantial gainful employment despite his impairments. Tr. 31. Specifically, the ALJ found that plaintiff could perform the representative occupations of Cafeteria Attendant, Office Helper, and Photo Copy Machine Operator. Tr. 32. Based on the findings at each step, the ALJ concluded that plaintiff was not disabled under the Act from January 1, 2003, through the date of her decision, November 21, 2016.

## DISCUSSION

Plaintiff contends that the ALJ erred by (1) improperly rejecting the opinions of plaintiff's treating physician, (2) improperly discounting statements from plaintiff's treating mental health provider, and (3) improperly discounting plaintiff's subjective symptom testimony. Each argument is addressed in turn.

## I. *Medical Opinion of Matthew Kaiser, M.D.*

Plaintiff argues that the ALJ improperly rejected Matthew Kaiser, M.D.'s medical opinions. Dr. Kaiser practices family medicine at PeaceHealth and treated plaintiff on one occasion, May 17, 2016. Tr. 656. At that appointment, Dr. Kaiser diagnosed plaintiff with lumbar spinal stenosis and noted plaintiff's prior lumbar laminectomy surgery for spinal cord decompression. *Id*. Dr. Kaiser's treatment notes indicated that plaintiff reported experiencing chronic pain since the laminectomy surgery. Tr. 658. Dr. Kaiser also noted the location of plaintiff's pain and the

sensation of the pain but did not indicate which actions or activities caused the pain or if plaintiff was in constant pain. *Id.* Dr. Kaiser noted that plaintiff had used a walker "since just before his spine surgery[,]" but did not indicate that he observed plaintiff having issues with sitting during the visit or that plaintiff mentioned any problems with sitting. *See* Tr. 656–59.

In a letter dated September 26, 2016, Dr. Kaiser provided opinions about plaintiff's sitting limitations. Tr. 705. The entirety of the letter reads: "[Plaintiff] is a patient under my care. He has a history of ongoing low back pain secondary to spinal stenosis and is unable to tolerate sitting for long periods of time." Tr. 705. The ALJ rejected that opinion because Dr. Kaiser did not define "long periods of time," and "he did not provide any physical examination findings or objecting [sic] medical tests results such as diagnostic imaging to support his conclusion." Tr. 27.

Dr. Kaiser's opinion was contradicted by examining doctor, Dr. Wendling, D.O., who opined that plaintiff could sit for up to six hours. *Compare* Tr. 705 *with* Tr. 371. As such, the ALJ need only provide specific and legitimate reasons, supported by substantial evidence, to reject Dr. Kaiser's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Specific, legitimate reasons for rejecting a physician's opinion include reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's daily activities. *Id.*

Plaintiff first argues that "the ALJ failed to consider Dr. Kaiser's opinions under the appropriate factors." Doc. 13 at 7. An ALJ must weigh the following factors

when considering medical opinions: (1) whether the source has an examining relationship with claimant; (2) whether the source has a treatment relationship with claimant; (3) supportability (as shown by relevant evidence and explanation); (4) consistency with the record as a whole; (5) specialization; and (6) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 404.1527(c)(1)–(6). The failure to consider these factors "alone constitutes reversible legal error." *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).

The Court finds that the ALJ properly considered the factors when weighing Dr. Kaiser's medical opinion. The ALJ recognized that Dr. Kaiser was a treating physician of plaintiff, while also considering that Dr. Kaiser only saw and treated plaintiff on one occasion in May 2016. Tr. 27. In the treatment notes from that single treatment occasion on May 17, 2016, Dr. Kaiser diagnosed plaintiff with lumbar spinal stenosis and noted plaintiff's prior lumbar laminectomy surgery for spinal cord decompression. *Id.* (citing Tr. 656). Further, the ALJ found that Dr. Kaiser had not sufficiently supported his opinion regarding plaintiff's sitting limitations to give it weight. *Id.* Under these factors, it was reasonable for the ALJ to afford little weight to Dr. Kaiser's opinion and she did not commit legal error for doing so.

Plaintiff next argues that the ALJ erred by rejecting Dr. Kaiser's opinion because Dr. Kaiser did not define the sitting limitations. Plaintiff asserts that it is the task of the ALJ, not the medical provider, to translate medical findings and opinions into concrete restrictions. When evaluating medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Bayliss v.*

*Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). And although an ALJ is charged with reviewing the medical record to determine limitations, *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008), only limitations that are supported by substantial evidence must be incorporated into a claimant's RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001). In plaintiff's RFC, the ALJ determined that plaintiff could sit for up to six hours in an eight-hour workday. Tr. 24. Plaintiff asserts that the medical record documents a greater restriction than that in the RFC. As explained below, the medical record does not include evidence to support the severe sitting limitation that plaintiff alleges.

Next, plaintiff challenges ALJ's finding that Dr. Kaiser failed to support his opinion. Plaintiff contends that imaging studies of plaintiff's back from February 2014, plaintiff's 2015 laminectomy surgery, and the medical record as a whole should provide the context in which Dr. Kaiser's September 2016 statement was made.

The Court finds this argument unconvincing as there is nothing in either Dr. Kaiser's treatment notes or the medical record as a whole indicating that plaintiff's back pain would cause limitations with sitting. Dr. Kaiser's treatment notes indicated that plaintiff had issues walking but did not indicate any other musculoskeletal issues, such as pain while seated. Tr. 656–59. Furthermore, as the ALJ pointed out, plaintiff never indicated that he had issues sitting and plaintiff's reported activities—specifically watching movies at the theater and reading at the library—negate the suggestion of a siting limitation. Tr. 23, 25. Although the ALJ did not specifically cite plaintiff's lack of alleged sitting impairment or other evidence

that showed a lack of sitting limitation in the section of her findings rejecting Dr. Kaiser's opinion, reviewing courts "are not deprived of [their] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). "Even when an agency explains its decision with less than ideal clarity, [courts] must uphold it if the agency's path may be reasonably discerned." *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (internal quotation marks omitted).

In sum, the ALJ correctly considered the relevant factors when weighing Dr. Kaiser's opinion, and she did not err by rejecting Dr. Kaiser's opinion for failing to define "long periods of time" or for failing to provide examinations or objective medical tests to support the opinion.

## II. *"Other" Medical Source Opinion of Betsy Pownall, LPC.*

Next, plaintiff asserts that the ALJ erred by discounting the opinion of plaintiff's counselor, Betsy Pownall, LPC. Ms. Pownall began conducting mental health therapy sessions with plaintiff in August 2014. Tr. 441. Ms. Pownall diagnosed plaintiff with major depressive disorder and posttraumatic stress disorder ("PTSD"). Tr. 439. On May 18, 2016, Ms. Pownall completed a mental residual function capacity assessment in the form of written responses and a check-box form. Tr. 548–54. Ms. Pownall later indicated that her assessment was based on plaintiff's depression. Tr. 662. Ms. Pownall noted that plaintiff socially isolates himself, feels that others are "against" him, and "deals with a feeling of hopelessness, fatigue and chronic pain, emotional lability, low self esteem and low self worth." Tr. 548. She

opined that plaintiff has marked limitations with understanding and remembering both simple and detailed instructions and with sustaining concentration and persistence, and he has moderate limitations with the ability ask simple questions or request assistance and the ability to be aware of normal hazards and take appropriate precautions. Tr. 552–54. Ms. Pownall stated that plaintiff's prognosis was fair with ongoing support. Tr. 554.

On May 23, 2016, Ms. Pownall submitted an additional letter in which she focused on the symptoms of plaintiff's PTSD and how it "affects his daily skills of living." Tr. 662. Ms. Pownall opined that plaintiff's "ability to keep up with the daily skills of his life is challenging for him" and "social isolation, sadness, fatigue, chronic physical pain, and depression impinge on [plaintiff's] ability to work and be productive." Tr. 662.

The ALJ afforded Ms. Pownall's opinions "partial weight." Tr. 29. The ALJ first noted that Ms. Pownall "opined [that] it was beyond her scope of practice and experience to answer accurately questions regarding the claimant's ability to work with others," Tr. 28, *see* Tr. 548, and Ms. Pownall repeatedly indicated that "she was unable to determine specific limitations." Tr. 29, *see* Tr. 552–54. The ALJ also noted that Ms. Pownall's "assessment was at least partially based on the claimant's self-report." Tr. 28–29. Finally, the ALJ stated that

> The opinion of a licensed professional counselor is not by an acceptable medical source and the opinion must be considered an opinion of "other sources" according to 20 CFR 404.1513 and 20 CFR 416.913. Furthermore, Ms. Pownall did not provide specific functional limitations. However, the opinion is consistent with the consultative examiner's findings indicating the claimant has severe mental health

conditions with social [sic] and concentration, persistence, and pace limitations.

Tr. 29.

Under the rules in effect at the time that plaintiff filed his claim, licensed professional counselors were not considered "acceptable medical sources." SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).[2] Non-acceptable medical sources are commonly categorized as "other sources." *Molina*, 674 F.3d at 1111. Although the opinions of other sources "are not entitled to the same deference [as acceptable medical sources], an ALJ may give less deference to 'other sources' only if the ALJ gives reasons germane to each witness for doing so." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (citing *Molina*, 674 F.3d at 1111). "The same factors used to evaluate the opinions of medical providers who are acceptable medical sources are used to evaluate the opinions of those who are not." *Id.*; SSR 06-03p at *2–3. Germane reasons to discount opinions include inconsistency with an opinion provided by an acceptable medical source and internal inconsistencies within the opinion. *Robinson v. Berryhill*, 690 Fed. App'x 520, 524 (9th Cir. 2017); *see Molina*, 674 F.3d at 1111–12. Additionally, an ALJ "may permissibly reject[] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions." *Molina*, 674 F.3d. at 1111 (internal citations omitted); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (An ALJ "need not accept [an] opinion [that] is brief, conclusory, and inadequately supported by clinical findings").

---

[2] SSR 06-03p defined "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists.

The ALJ did not err in discrediting Ms. Pownall's opinions regarding plaintiff's limitations because Ms. Pownall herself stated that she had difficultly determining plaintiff's functioning and limitations. The ALJ specifically mentions that in Ms. Pownall's first assessment, she was unable to opine on multiple areas related to Plaintiff's limitations and "did not provide specific functional limitations" in her Mental Residual Functional Capacity Report. Tr. 29–28. Furthermore, in her first assessment, Ms. Pownell repeatedly indicated that she was unable to determine specific limitations and said that it was "difficult for [her] to state directly whether [she] believe[d] [plaintiff] could hold down a full time job." Tr. 548–54. However, just a few days later, Ms. Pownall submitted a second assessment in which she opined that plaintiff experiences symptoms that would inhibit his ability to work. Tr. 662. Because Ms. Pownall gave two different opinions on plaintiff's ability to work within a short time frame, it creates ambiguity in her opinion as to whether plaintiff has limitations as it relates to working. This ambiguity is a germane reason to discredit Ms. Pownall's opinion. *See Robinson*, 690 Fed. App'x at 524 (where the court found that the ALJ appropriately discrediting the opinion of an "other source" because it contained internal inconsistencies and the opinion contradicts the opinions of acceptable medical sources); *see Molina*, 674 F.3d at 1111–12 (where the court found statements from the "other source" to be inconsistent because the source said that the claimant experienced intermittent panic attacks but also said that the claimant panicked in several situations throughout the day, rendering the claimant unable to work).

Similarly, the ALJ did not err when she cited the lack of specific functional limitations as a reason to only award partial credit to Ms. Pownall's opinion. An ALJ "is not required to provide any reasoning to reject medical opinions that do not contain specific functional limitations." *Wilson v. Berryhill*, 732 Fed. App'x 504, 506 (9th Cir. 2018) (citing *Stubbs-Danielson*, 539 F.3d at 1174). Furthermore, the ALJ compared Ms. Pownall's opinions with the opinions of Dr. Roman. Tr. 29. As such, the Court should defer to the ALJ's reasonable assessment of specific functional limitations regarding plaintiff's concentration and memory limitations because they are supported by substantial evidence in the record. *See Stubbs-Danielson*, 539 F.3d at 1174; *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

By contrast, the ALJ did err in citing the fact that Ms. Pownall was not an acceptable medical source when discrediting Ms. Pownall's opinion. Both acceptable medical sources and "other" medical sources may opine on a claimant's functional limitations, 20 C.F.R. §§ 404.1513(a)(3)–(4), 404.1527(f), 416.913(a)(3)–(4), 416.927(f), even if "other source" opinions are not given the same level of deference as acceptable medical sources. *Molina*, 674 F.3d at 1111 (citing § 404.1527; SSR 06-03p, 2006 SSR LEXIS 5). However, that error is harmless because the ALJ's other reasons for rejecting Ms. Pownall's opinion were germane and supported by substantial evidence. *See Molina*, 674 F.3d at 1115 (error is harmless where it is inconsequential to the ultimate nondisability determination).

Finally, plaintiff argues that the ALJ impermissively discounted Ms. Pownall's opinion because it was partially based on plaintiff's self-report. Although the ALJ's decision noted that some of Ms. Pownall's opinions were based in part on plaintiff's self-report, it is unclear, in context, whether the ALJ rejected the opinions for that reason. Tr. 28–29, 552.

To the extent the ALJ did discount the opinion for this reason, that was error. It is appropriate and acceptable for opinions regarding mental health to demonstrate partial reliance on a claimant's self-report. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). But, like the ALJ's reliance on Ms. Pownall's status as an "other" medical source, any error in discounting Ms. Pownall's opinions for being based on plaintiff's self-report would be harmless.

In sum, the ALJ did not commit reversible error in assigning partial weight to Ms. Pownall's opinions about plaintiff's mental limitations.

## III.  *Plaintiff's Subjective Symptom Testimony*

Finally, plaintiff argues that the ALJ erred in rejecting his subjective symptom testimony. Plaintiff alleges that his rejected testimony demonstrates that he has both physical and mental limitations that will detrimentally impact his ability to work.

Physically, plaintiff testified to having back issues that resulted in severe pain. Tr. 59, 64, 245, 250, 291, 296, 399, 418, 430, 560. At the hearing, plaintiff testified that shortly before he applied for benefits, he was unable to walk more than a few steps without severe pain. Tr. 50. He also explained that in 2015 he had a laminectomy back surgery to resolve his back pain and then a secondary surgery

shortly after the first in order to fix a spinal fluid leak, which prolonged and complicated his recovery. Tr. 64, *see also* 598–99, 639–42. Plaintiff asserted that he continued to have pain while walking and standing despite the surgery, and that he could only walk a block before needing to rest for five to ten minutes. Tr. 64. Plaintiff also testified to limitations with use of his hands. Tr. 291. Plaintiff stated that he had reduced sensation in his hands and that using a keyboard for more than an hour would result in virtual incapacitation of his left hand for a month. Tr. 63–64. At the same time, plaintiff acknowledged that he never received treatment for his hands. Tr. 64.

Mentally, plaintiff asserts several limitations that would impair his ability to work. First, plaintiff asserts that he experiences unease and finds it difficult to be around others. Tr. 248, 250, 296. In his functional reports, plaintiff says that he does not have friends, nor does he feel comfortable around others as a result of his disability. Tr. 248, 292. He has also self-reported such issues to his counselor, Ms. Pownall. Tr. 444, 446. At the hearing, plaintiff testified that he did not "deal well with the public." Tr. 61. Additionally, even when provided a script and only communicating with others via telephone, plaintiff found it difficult to perform his previous job as a fundraiser due to the necessary interacts with the public. Tr. 61. Second, plaintiff claims that his depression impacts his ability hold employment. Previously, plaintiff experienced suicidal ideation, and he continues to have depressive symptoms and mood. *See* 668, 436–546. His depression worsened during his alleged disability period after the death of his significant other. Tr. 436. Plaintiff

takes medication for his mental health issues and attends therapy. Tr. 65, 374, 436–546, 673–85. Plaintiff reported to his counselor that therapy has improved his mental health. Tr. 496.

To determine whether a claimant's testimony regarding his symptoms are reliable, the ALJ must engage in a two-step analysis. *Tommasetti*, 533 F.3d at 1039. First, the claimant must "produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom." *Id.* Second, if the claimant produces this evidence and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms "only by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotation marks omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

The ALJ found that plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 30. First, the ALJ found that plaintiff engages in daily activities that "are not limited to the extent one would

expect, given his complaints of disabling symptoms and limitation." Tr. 25. These

activities conflicted with both the physical and mental limitations that plaintiff

claims to have. *Id.* Second, the ALJ determined that the medical record does not

support the alleged symptoms and limitations that plaintiff claims to experience. *Id.*

As mentioned, the ALJ rejected plaintiff's alleged limitations, in part because

they were inconsistent with his reported activities of daily living. The ALJ explained:

> Due to his conditions and symptoms, the claimant stated that he has a
> number of limitations, some of which involve lifting, squatting, bending,
> standing, reaching, walking, kneeling, stair climbing, using his hands,
> getting along with others, following instructions, and handling stress.
> He reported that he tended to resent authority and he has been fired
> from jobs over disagreements with supervisors. The claimant noted that
> people make him uncomfortable and he no longer has friends or connects
> with others. Despite such allegations of disabling symptoms and
> limitations, the claimant can ride his bicycle into town, travel outside of
> his home independently, tend to his personal care needs without special
> reminders, care for his cat, prepare simple meals, clean, make his bed,
> do laundry, shop in stores, live with friends, go to the movie theater and
> library, remember to take his medications, count change, watch movies,
> and read. Thus, the claimant engages in activities that are not limited
> to the extent one would expect, given his complaints of disabling
> symptoms and limitation.

Tr. 25 (internal citations omitted).

Daily activities may be used to discredit a claimant where they either "are

transferable to a work setting" or "contradict claims of a totally debilitating

impairment." *Molina*, 674 F.3d at 1112–13 (citations omitted). Even if a plaintiff

shows some difficulties in functioning when performing those activities, the activities

can still constitute grounds for discrediting claimant's testimony "to the extent that

they contradict claims of a totally debilitating impairment." *Id.* However, a plaintiff

need not be totally incapacitated in order to be eligible for benefits. *Id.* at 1112–13.

The ALJ appropriately discredited plaintiff's subjective symptom testimony after she found that plaintiff's daily activities were inconsistent with his alleged limitations regarding his mental health. Plaintiff claimed that he has difficulty "getting along with others" and had issues in the area of social functioning due to his mental health. Tr. 23, 25. The ALJ noted that, although plaintiff "demonstrates that [he] has some issues getting along with people and maintaining friendships," he "is able to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Particularly, the claimant can shop in stores around other customers, live with friends, and go to the movie theater and library." Tr. 23. ALJs may discredit a plaintiff's testimony regarding alleged limitations in social function when those limitations are contradicted by a claimant's daily activities. *See Molina* 674 F.3d at 1113. The record supports the ALJ's findings that plaintiff's daily activities detract from his claims of mental limitations.

However, the ALJ erred when she used plaintiff's daily activities to discredit plaintiff's testimony about his physical limitations. The ALJ found that plaintiff had only mild limitations in physical functioning because he could "engage in activities of daily living in an appropriate and effective manner, on an independent and sustained basis." Tr. 23. Specifically, the ALJ mentioned that plaintiff could "ride his bicycle into town, travel outside of his home independently, tend to his personal care needs without special reminders, care for his cat, prepare simple meals, clean, make his bed, and do laundry." *Id.* As such, the ALJ found that plaintiff's claimed limitations regarding standing, walking, and squatting were not as severe as alleged. Tr. 25.

The Court finds that the ALJ failed to specify how claimant's daily activities contradicted his alleged limitations and failed to provide sufficient evidence of such contradictions. For instance, plaintiff testified that at the end of his time working forty hours a week at the fairgrounds in 2013, he "couldn't even walk a few steps without really severe pain." Tr. 59, 272. The ALJ found his alleged inability to walk contradicted by his statements from around the same time that he leaves the house daily and cleaned his home. Tr. 294; *compare* Tr. 59, 245, 291, 296 *with* Tr. 246, 292, 294, 295, 297. However, the ALJ did not explain how that testimony contradicted his alleged physical limitations. Additionally, the ALJ did not sufficiently develop the record to include evidence supporting a contradiction between plaintiff's testimony. For example, the ALJ did not ask how long plaintiff spent on daily outings or cleaning the house. There is a wide disparity between the physical exertion and stress put on the body during an eight-hour workday and during short outings into town. The ALJ's decision similarly lacks either an explanation of how a daily activity conflicted with an alleged limitation or substantial evidence that a conflict actually exists are present for each of plaintiff's alleged physical limitations addressed in the decision. Accordingly, the ALJ erred in rejecting plaintiff's physical limitation testimony based on his reported daily activities.

The ALJ also reasoned that the objective medical findings "fail to provide strong support for the claimant's allegations of disabling symptoms and limitations," and that they do not support the existence of limitations greater than those in the RFC. Tr. 25. An ALJ may reject a claimant's allegations if his "statements at [the]

hearing do not comport with objective evidence in [the] medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, "simply stat[ing] [a] non-credibility conclusion and then summariz[ing] the medical evidence supporting [the] RFC determination" is not sufficient to pass the clear and convincing threshold. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. Nov. 3, 2015); *see also*, *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014) (holding that the ALJ committed legal error because he "never *connected* the medical record to Claimant's testimony" nor made "a specific finding *linking* a lack of medical records to Claimant's testimony about the intensity of her . . . pain" (emphasis added)). Here, the ALJ specifically noted that plaintiff has a left shoulder sprain, lumbar spine degenerative disc disease, thoracic lumbosacral radiculitis status post laminectomy, and major depressive disorder. Tr. 25–27.

Regarding plaintiff's depression, the ALJ observed that plaintiff reported "a depressed mood with anxiety, irritability, tearfulness, somatic complaints, low self-esteem, social isolation, loneliness, poor sleep, compulsive behaviors, difficulties completing simple tasks, loss of motivation, severe fatigue, hopelessness, suicidal ideation, concentrating difficulties, and poor memory." Tr. 26. However, the ALJ concluded that the medical record suggested that these reported symptoms were not as severe as plaintiff alleged. The ALJ found that the medical record showed that plaintiff was "alert, oriented, appropriate, pleasant, cooperative, and well-groomed with appropriate eye contact, normal mood and affect, good attention and concentration, intact recent and remote memory, normal speech and language,

appropriate thought content, appropriate judgment and insight, and adequate fund of knowledge." Tr. 27 (citing Tr. 349, 359, 439, 565).

Regarding plaintiff's lumbar spine degenerative disc disease and thoracic lumbosacral radiculitis status post laminectomy, the ALJ identified discrepancies between plaintiff's alleged limitations pre-back surgery and the medical records from the same time. Tr. 26. The ALJ reasoned that even though there were limitations during the period right before plaintiff's first back surgery until his second back surgery, the medical record indicates that plaintiff made "nice progress" and that plaintiff self-reported "significant improvement with functional activities throughout the day with decreased pain." Tr. 26. This evidence directly contradicts plaintiff's hearing testimony where he reports pain immediately upon standing and great limitations on how long he can walk before resting. Tr. 64.

As discussed above, the ALJ erred in discrediting plaintiff's testimony of physical limitations based on his daily activities. Although the ALJ did not err in reasoning that the objective medical evidence does not support the level of physical limitation claimed by plaintiff, "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Therefore, the Court cannot conclude that the ALJ would have reached the same result had she not erroneously concluded that plaintiff's daily activities were inconsistent with his testimony about his limited ability to walk without pain or rests, and the ALJ's error was not harmless. *Molina*, 674 F.3d at 1115 (errors made by the

ALJ are considered harmless where the court concludes "that the ALJ would have reached the same result absent the error" and the error is "inconsequential to the ultimate nondisability determination").

## IV. *Type of Remand*

Plaintiff asks that the court remand her case for an immediate award of benefits. The Ninth Circuit precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met. *Burrell*, 775 F.3d at 1141. Under the three-step "credit-as-true" doctrine, the reviewing court must first determine whether the ALJ committed harmful legal error. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), *as amended* (Feb. 5. 2016). Second, if the court finds such an error it must "review the record as a whole and determine whether it is fully developed, free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (quotation marks omitted). Third, if the court does determine that the record has been fully developed, and there are no outstanding issues left to be resolved, the court must consider whether "the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Id.* (quotation marks omitted).

Here, the first step is satisfied because the ALJ improperly discredited plaintiff's subjective symptom testimony by determining that his daily activities conflicted with his alleged limitations.

However, step two is not met because the record is not fully developed and still contains ambiguities regarding whether or not plaintiff's daily activities conflict with

his alleged limitation. For instance, it is unclear how long plaintiff's outings to town, the library, and theatre were and much time plaintiff spent sitting and walking during these trips. Additionally, it is unclear from the record whether plaintiff's impairments would have inhibited him from riding a bike. On remand, the ALJ shall reevaluate plaintiff's alleged physical limitations and conduct any proceedings necessary to resolve ambiguities relating to plaintiff's alleged limitations and his daily activities.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings.

IT IS SO ORDERED.

Dated this  31st  day of  March     2020.


_____ /s/Ann Aiken _____
Ann Aiken
United States District Judge